**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHANTHI R. HEJAMADI and RICARDO VARELA, *on behalf of themselves and those similarly situated*,<br><br>*Plaintiffs,*<br><br>v.<br><br>MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC.; and JOHN DOES 1 to 10,<br><br>*Defendants.* | Civil No.: 18-13203 (KSH) (CLW)<br><br>**Opinion** |

**Katharine S. Hayden, U.S.D.J.**

**I.    Introduction**

Plaintiffs, Shanthi R. Hejamadi ("Hejamadi") and Ricardo Varela ("Varela"), sued defendants Midland Funding, LLC ("Midland Funding") and Midland Credit Management, Inc. ("MCM") on behalf of themselves and others similarly situated for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (D.E. 13 ("FAC").) Currently before the Court is defendants' motion to compel arbitration of plaintiffs' claims on an individual basis and dismiss the first amended class action complaint (the "FAC"). (D.E. 20.) As set forth below, the motion

is denied without prejudice, and the parties are ordered to conduct limited discovery on the issue of arbitrability.

## II. Background

### A. The Amended Complaint's Factual Allegations

Plaintiffs allege that defendants assert that they "incurred or owed certain financial obligations arising from" accounts "which were primarily for [their] personal, family, or household purposes" (the "Accounts"). (FAC ¶ 13.) Plaintiffs further maintain that the Accounts were assigned to or placed with defendants for collection at which time they "were past-due and in default." (*Id.* ¶¶ 15-16.)

Defendants sought to collect a debt that Hejamadi owed by mailing her collection letters dated October 25, 2017, and November 13, 2017. (*Id.* ¶ 17; D.E. 13-1.) Similarly, defendants mailed Varela a collection letter dated November 14, 2017 in an attempt to collect a debt he owed. (FAC ¶ 18; D.E. 13-2.) Those collection letters stated "**LET US HELP YOU!** If the account goes to an attorney, our flexible options may no longer be available to you. There is still an opportunity to make arrangements with us." (FAC ¶ 20; D.E. 13-1 at 1, 2; D.E. 13-2 at 1.)

Plaintiffs allege that, '[c]ontrary to [their] statements" in those collection letters, defendants "continue to offer flexible payment options for accounts even after they are sent to attorneys or after lawsuits have been filed." (FAC ¶ 21.) They further assert that defendants do not, nor did they ever, intend "to make flexible payment options unavailable." (*Id.* ¶¶ 22-23.) According to plaintiffs, defendants' "policy and practice"

2

to send collection letters that allegedly "falsely threaten that flexible options will no longer be available" violates the FDCPA. (*Id.* ¶¶ 24-25.)

### B. <u>Procedural History</u>

To collect the debt allegedly owed by Hejamadi, Midland Funding sued her in the Superior Court of New Jersey, Bergen County, Special Civil Part. (*See* D.E. 1 ("Not. of Rem.") ¶ 1.) On May 24, 2018, Hejamadi filed an answer and class action counterclaim asserting one cause of action for violation of the FDCPA. (D.E. 1-1.) Midland Funding subsequently dismissed its claim against Hejamadi with prejudice. (Not. of Rem. ¶ 2.) On August 2, 2018, Hejamadi sought to transfer her class action counterclaim to the Law Division. (*Id.*) On August 17, 2018, as a result of Midland Funding dismissing its cause of action against Hejamadi, the state court entered an order realigning the parties so that Hejamadi was now identified as plaintiff and Midland Funding was identified as defendant. (D.E. 1-2.) That same day, the state court issued a second order transferring the case to the Law Division. (D.E. 1-3.) Midland Funding removed the action to this Court on August 24, 2018. (Not. of Rem.) The action in this Court was originally captioned as Hejamadi against Midland Funding. (*Id.*)

On November 26, 2018, the operative amended complaint was filed. (FAC.) It added Varela as a plaintiff and MCM as a defendant. (*Id.*) Plaintiffs purport to bring it on behalf of a class defined as:

> All natural persons with an address within [] the State of New Jersey, to whom, from December 1, 2016 through and including May 24, 2018, Defendants sent one or more letters in an attempt to collect a Citibank,

3

> N.A. debt which contained the same or similar statement that "If the account goes to an attorney, our flexible options may no longer be available to you."

(*Id.* ¶ 27.)

On February 4, 2019, defendants filed the pending motion to compel arbitration and dismiss the FAC. (D.E. 20.) Defendants argue that the agreements governing the Accounts provide that (i) all claims related to the Accounts must be submitted to binding arbitration, and (ii) plaintiffs' waived their right to bring class action claims.[1]

Defendants have included the operative agreements for each of plaintiffs' Accounts as exhibits to the motion to compel arbitration. They each contain the following arbitration provision:

**ARBITRATION**

*PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*

**THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA),**

---

[1] Defendants also contend that plaintiffs' class allegations are improper and that their claims against MCM are barred by the FDCPA's statute of limitations. The Court will defer any decision on those issues until defendants renew their motion to compel arbitration after the parties have conducted limited discovery as contemplated by this opinion.

> **AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**

(D.E. 20-3, Ex. 2 ("Hejamadi Agreement") at 10; D.E. 20-4, Ex. 2 ("Varela Agreement") at 10.) The agreements also contain a class action waiver. (Hejamadi Agreement at 11; Varela Agreement at 11.) In addition, defendants supplied affidavits from employees of MCM (D.E. 20-2) and the original creditor, Citibank, N.A. ("Citibank"), (D.E. 20-3; D.E. 20-4) and bills of sale to show that plaintiffs agreed to the arbitration provisions that defendants claim were transferred to them (D.E. 20-2, Ex. A; D.E. 20-3, Ex. 3; D.E. 20-4, Ex. 3).

Plaintiffs do not dispute that the agreements exist, or that they contain the above arbitration provision and class action waiver. Rather, they argue that defendants failed to prove that they acquired rights to enforce the arbitration provision. Specifically, plaintiffs contend that defendants failed to submit the purchase agreement transferring the Accounts from the Citibank to defendants so as to show to what extent the purchase agreement transferred arbitration rights to defendants.

### III. Discussion

The Federal Arbitration Act (the "FAA") "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the

5

dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). A court is required to order that the parties proceed with arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). The "presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Kirleis*, 560 F.3d at 160 (quoting *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). Nevertheless, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

At issue here is the first question a court must ask before compelling parties to arbitrate—whether there is an agreement to arbitrate. In determining whether an agreement to arbitrate exists, a court must first assess whether to apply the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or a motion for summary judgment under Fed. R. Civ. P. 56. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013); *see also Droney v. Vivint Solar*, No. 18-849, 2018 WL 6191887, at *3 (D.N.J. Nov. 28, 2018) (Kugler, J.) (noting that "[t]he Third Circuit has set a two-tier standard of review when considering motions to compel arbitration" under Fed. R. Civ. P. 12(b)(6) and 56). The Third Circuit has explained that analysis as follows:

6

To summarize, when it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not warranted because "the party opposing arbitration can demonstrate, by means of citations to the record," that there is "a genuine dispute as to the enforceability of the arbitration clause," the "court may then proceed summarily to a trial regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions."

*Guidotti*, 716 F.3d at 776 (alteration in original) (citations omitted).[2]

Plaintiffs do not attach a copy of the agreements containing the arbitration provision to the FAC, and their claims are based entirely on the collection letters allegedly sent by defendants. Indeed, plaintiffs do not even mention the agreements or arbitration provision in the FAC. Rather, their existence is raised for the first time by

---

[2] Defendants suggest in their reply that the Third Circuit's decision in *Guidotti* stands for the proposition that limited discovery on arbitrability is only necessary if a plaintiff comes forward with competent evidence showing that there was no contractual agreement to arbitrate. To the contrary, in *Guidotti*, the Third Circuit made clear that, "*if the complaint and its supporting documents are unclear regarding the agreement to arbitrate . . . ,* then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Id.* at 776 (alteration in original) (emphasis added) (citation and internal quotation marks omitted).

defendants in their motion to compel arbitration and the affidavits they submitted in support of that motion.

Undeterred, defendants argue that the FAC "readily admits the existence" of the agreements by alleging plaintiffs' debts "were incurred for personal, family or household purposes" and "were past-due and in default" when they were "placed with or assigned" to them for collection. (D.E. 27 at 5.) Courts in this District, however, have found that such allegations are insufficient to show that an agreement to arbitrate exists. *See, e.g.*, *Tailor v. Rushmore Serv. Ctr., LLC*, No. 18- 13698, 2019 WL 518543, at *1-2 (D.N.J. Feb. 11, 2019) (Martini, J.) (finding that there should be limited discovery on the question of arbitrability when plaintiffs alleged they incurred personal debts that were assigned to defendants for collection); *Tailor v. Midland Funding, LLC*, No. 18-11320, 2019 WL 494622, at *3-4 (D.N.J. Feb. 7, 2019) (Mannion, Mag. J.) (denying a motion to compel arbitration and ordering limited discovery where the complaint contained similar allegations as those relied on by defendants), *adopted by*, 2019 WL 943520 (D.N.J. Feb. 25, 2019) (Wigenton, J.).

Accordingly, "[b]ecause the question of arbitrability cannot be resolved without considering evidence extraneous to the pleadings, it would be inappropriate to apply a Rule 12(b)(6) standard in deciding the instant motion." *Torres*, 2018 WL 5669175, at *2. Thus "the motion to compel arbitration must be denied pending further

development of the factual record." *Guidotti*, 716 F.3d at 774.[3] For instance, as plaintiffs note, further factual development is required to determine whether defendants were transferred the right to enforce the arbitration provision. As the court's opinion in *Garcia v. Midland Funding, LLC*, No. 15-6119, 2017 WL 1807563 (D.N.J. May 5, 2017) (Kugler, J.), makes clear, this inquiry is critical.

> The Court finds that, even with a "healthy regard for the strong federal policy in favor of arbitration," the Agreement did not clearly convey the right to demand individual arbitration in the instant case from GECRB to Defendant. The Agreement provides separate definitions for "Account" and "Receivable." "Account" refers to "any credit account owned by Seller with respect to which there is a receivable." Burger Affidavit, Ex. A § 1.1. "Receivable" refers to "any credit account receivable that is being sold to Buyer pursuant to the terms of this Agreement as such receivable exists as of the Cut-Off Date, to the extent such receivable is set forth on the applicable Notification File." *Id.* The Agreement's Purchase and Sale Clause states, "Seller shall sell and Buyer shall buy all right (including the right to legally enforce, file suit, collect,

---

[3] *See also Hubbard v. Comcast Corp.*, No. 18-16090, 2019 WL 2866067, at *2 (D.N.J. July 3, 2019) (Kugler, J.) (noting that "courts routinely deny motions to compel arbitration and allow limited discovery on the issue of arbitrability" when the complaint is unclear regarding whether the parties agreed to arbitrate); *Sauberman v. Avis Rent a Car Sys., L.L.C.*, No. 17-0756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (Martini, J.) ("Because the Complaint does not establish on its face that the parties agreed to arbitrate, the Court cannot decide the present motion without first ordering limited discovery as to the question of arbitrability."); *Schultz v. Midland Credit Mgmt., Inc.*, No. 16-4415, 2019 WL 2083302, at *7 (D.N.J. May 13, 2019) (Linares, J.) (directing the parties "to conduct limited discovery on the narrow issue of whether an enforceable arbitration agreement exists" upon finding that "[t]he Amended Complaint makes no mention of Mr. Schultz's underlying credit card agreement with Synchrony Bank, and its only attachments are the collection letters sent by Defendant that Plaintiffs allege violated the FDCPA"); *Nicasio v. Law Offices of Faloni & Assocs., LLC*, No. 16-0474, 2016 WL 7105928, at *2 (D.N.J. Dec. 5, 2016) (Martini, J.) (ordering limited discovery on the question of arbitrability because "Plaintiffs' Complaint makes no reference to the Agreement; it does not attach the Agreement as an exhibit; and it does not base its FDCPA claim on the existence of the Agreement").

> settle or take any similar action with respect to such Receivable), title and interest in and to the Receivables with respect to which Buyer has received a Notification File." *Id.* § 2.1. As previously noted, the effective account agreement notes that GECRB may assign, transfer, or sell any or all rights associated with Plaintiff's credit account. The Agreement certainly passed the "Receivables" and associated rights from GECRB to Defendant, but the Court does not find that the Agreement transferred all of the rights associated with Plaintiff's account to Defendant. Defendant received rights associated with the Receivables. Defendant acquired the right to collect the receivable, the right to bring an action to collect the receivable, etc., but the Agreement does not, on its face, convey the broad right to compel arbitration for "any dispute or claim" relating to Plaintiff's Account. Koehler Affidavit, Ex. B. The right to compel arbitration for Plaintiff's FDCPA claim is not associated with legally enforcing, filing suit, collecting, settling, or a similar action with respect to the receivable. Therefore, Defendant's motion to compel arbitration will be denied.

*Id.* at *3 (citation omitted).

Once the parties have completed limited discovery on the issue of arbitrability, defendants may renew their motion to compel arbitration. At such time, the Court will review it pursuant to the standard applicable to motions for summary judgment under Fed. R. Civ. P. 56. *See Guidotti*, 716 F.3d at 776 ("After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.").[4]

---

[4] Because the Court is ordering limited discovery on whether defendants may enforce the arbitration provision, it will defer ruling on all other issues raised by defendants' motion until after deciding whether plaintiffs' claims are subject to arbitration.

## IV. Conclusion

For the above stated reasons, the Court denies, without prejudice, defendants' motion to compel arbitration and dismiss the FAC. An appropriate order will be entered.

|  |  |
|---|---|
| Dated: October 1, 2019 | /s/ Katharine S. Hayden<br>Katharine S. Hayden, U.S.D.J. |