<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHANTHI R. HEJAMADI and RICARDO VARELA, *on behalf of themselves and those similarly situated*,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC.; and JOHN DOES 1 to 10,<br><br>    *Defendants*. | Civil No.: 18-cv-13203 (KSH) (CLW)<br><br><br><br><u>**OPINION**</u> |

**Katharine S. Hayden, U.S.D.J.**

**I. Introduction**

  Plaintiffs Shanthi R. Hejamadi and Ricardo Varela ("plaintiffs") sued defendants Midland Funding, LLC ("Midland Funding") and Midland Credit Management, Inc. ("MCM") (collectively, "defendants") on behalf of themselves and others similarly situated for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Defendants previously moved to dismiss plaintiffs' amended complaint and compel arbitration (D.E. 20) pursuant to an arbitration provision in the agreements governing their credit card accounts. Having found that the question of arbitrability could not be resolved without considering evidence extraneous to the pleadings, the Court denied the motion without prejudice pending further development of the factual record. (D.E. 36, 37.)

  Defendants now renew their motion to dismiss and compel arbitration (D.E. 70), arguing that the evidence adduced in discovery demonstrates their entitlement to enforce the arbitration provision. The motion is fully briefed, and the Court decides it without oral argument.

1

II.     Background

    A. Factual Background

The facts relevant to the instant motion are as follows. Plaintiffs Varela and Hejamadi opened Home Depot credit card accounts with Citibank, N.A. (the "accounts") on December 20, 2004 and May 14, 2016, respectively. (D.E. 71-1, Plfs' Responsive Stmt. ¶¶ 1, 6.) Each account is subject to a written credit card agreement setting forth its applicable terms and conditions (collectively, the "card agreements"). (D.E. 70-2, 70-3, Peck Decls. ¶ 8.)[1]

The card agreements contain an arbitration provision entitled "**ARBITRATION,**" which provides in pertinent part as follows:

> *PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*
>
> **THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**
>
> **Covered claims**
>
> - *You or we may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").
>
> - **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**
>
> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional

---

[1] Both agreements were amended in or around December 2016 on notice to plaintiffs. (*Id.* at ¶ 11.)

tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law . . .

**Arbitration limits**

- Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court.

- We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us.  If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you.  You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.

- Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis.  The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis.  If arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action or other representative action. . . .

(*Id.* at Ex. 2, Arb. Agmt. at 10-11)  The arbitration provision also contains an assignment clause, which provides that Citibank "may assign any or all of [its] rights and obligations under this Agreement to a third party," as well as a survival clause which expressly contemplates the arbitration provision's survival upon "termination of the account or the relationship" between Citibank and plaintiffs, including in the event of "any sale of [the] account, or amounts owed on [the] account, to another person or entity."  (*Id.* at 12.)

On or about September 29, 2017, Midland Funding purchased a pool of credit card accounts from Citibank, N.A., including those held by plaintiffs.  (D.E. 70-1, Swaninger Decl. at ¶ 4; Peck Decls. at ¶ 13.)  In connection with the transaction, Midland Funding and Citibank executed a purchase and sale agreement (the "P&S agreement"), which memorialized Citibank's agreement "to sell, assign and transfer to [Midland Funding]," and Midland Funding's agreement "to purchase from [Citibank] on the Closing Date all right, title and interest of [Citibank] in and to the Accounts."  (Swaninger Decl. at Ex. A, P&S Agmt. at ¶ 2.1.)  The P&S agreement also set

3

forth Citibank's agreement to "transfer all [its] right, title and interest in and to the Accounts," and Midland Funding's agreement to "assume, with respect to each Account, all of [Citibank's] rights, responsibilities, and obligations that arise as a result of [its] purchase of the Accounts." (*Id.* at ¶ 2.4.) Citibank also executed, as the "original creditor," two additional documents in connection with the transaction: (i) a bill of sale and assignment, which memorialized Citibank's decision to "transfer, sell, assign, convey, grant, bargain, set over and deliver to [Midland Funding], and to [its] successors and assigns, the Accounts"; and (ii) an affidavit of sale, in which Citibank's Senior Vice President acknowledged its "sale of the Accounts" and transfer of relevant records to Midland Funding. (*See* Peck Decls., Ex. 3.)[2]

### B. Procedural History[3]

Hejamadi allegedly defaulted on her account and Midland Funding initiated a debt collection action against her in the Superior Court of New Jersey, Bergen County. (*See* D.E. 1.) After Hejamadi filed an answer and class action counterclaim asserting an FDCPA cause of action, Midland Funding dismissed its claims against her with prejudice and removed the action to this Court on August 24, 2018. (*See id.; see also* D.E. 1-1.) The operative amended complaint, which added Varela as a plaintiff and MCM as a defendant, was filed on November 26, 2018. (D.E. 13.)

Defendants first moved to dismiss the amended complaint on February 4, 2019, and sought an order compelling plaintiffs to arbitrate their FDCPA claims pursuant to the arbitration

---

[2] The term "Account" is defined in the P&S agreement to mean Citibank's "accounts and receivables charged-off prior to the applicable Cut-Off Date, all of which are summarized monthly on the Asset Schedule and the Final Electronic File . . . (attached hereto as Exhibit 1)[.]" (P&S Agmt. at ¶ 1.2.) The term "Account" is not defined in either the bill of sale and assignment or the affidavit of sale.

[3] A more detailed recitation of this matter's procedural history is set forth in the Court's October 2, 2019 Opinion (D.E. 36).

provision in their card agreements. (*See* D.E. 20.) Having determined that resolution of the motion would require consideration of evidence extraneous to the pleadings, the Court denied it without prejudice pending further development of the factual record in accordance with *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013). (*See* D.E. 36, 37.) Notably, the Court found that "further factual development [was] required to determine whether defendants were transferred the right to enforce the arbitration provision" from Citibank. (D.E. 36, Op. at 8-9.)

After engaging in limited discovery under the supervision of Magistrate Judge Cathy L. Waldor, defendants renewed their motion (D.E. 70), arguing that the evidence adduced in discovery demonstrates their entitlement to enforce the arbitration provision in plaintiffs' card agreements. They rely on their briefs (D.E. 70-4, Mov. Br.; D.E. 78, Reply Br.) and the affidavits of Adam Swaninger (D.E. 70-1, Swaninger Decl.), MCM's Operations Manager, and William Peck (D.E. 70-2, 70-3), a Document Control Officer for Citibank. Attached to those affidavits are plaintiffs' card agreements, as well as the P&S agreement, the bill of sale and assignment, and the affidavit of sale.[4] Plaintiffs oppose, relying on a brief (D.E. 71, Opp. Br.) and a responsive statement of material facts (D.E. 71-1, Plfs' Responsive Stmt.).

### III. Discussion

#### A. Standard of Review

Where, as here, the Court has ordered limited discovery concerning the validity of an arbitration agreement, "Rule 56 furnishes the correct standard for ensuring that arbitration is

---

[4] The filed P&S agreement contains redactions, which purportedly "exclude the portions . . . irrelevant to the arbitration issue." (Reply Br. at 8.) Defendants assert that they produced the full agreement in discovery with limited redactions—*i.e.*, pricing and other monetary information, vendor names, and names and addresses of parties—without objection from plaintiffs, and designated it confidential. (*Id.* at 2, n. 1; *see also* Mov. Br. at 8.)

awarded only if there is an express, unequivocal agreement to that effect." *Guidotti,* 716 F.3d at 774-75 (internal citations and quotations omitted). Accordingly, the standard of review on a motion to dismiss and compel arbitration is the same as "the standard used by district courts in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c) . . . inasmuch as the district court's order to arbitrate is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir. 1980).

Under Rule 56(c), judgment in favor of the movant is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is not warranted where "the party opposing arbitration can demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause." *Guidotti*, 716 F.3d at 776 (internal citations and quotations omitted). If that is the case, the "court may then proceed summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or refusal to perform the same, as Section 4 of the [Federal Arbitration Act] envisions." *Id.*

### B. Federal Arbitration Act

The issue of whether plaintiffs' FDCPA claims should be referred to arbitration is governed by the Federal Arbitration Act (the "FAA"). (*See* Arb. Agmt. at 10 ("**THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA)").**) The FAA was enacted "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts."

6

*Pyo v. Wicked Fashions, Inc.*, 2010 WL 1380982, at *4 (D.N.J. Mar. 31, 2010) (Debevoise, J.) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). Accordingly, under the FAA there is a "strong federal policy in favor of the resolution of disputes through arbitration." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "Where there is a contract between the parties that provides for arbitration, . . . '[a]ny doubt concerning the scope of arbitrability should be resolved in favor of arbitration.'" *BP Auto Grp., LLC v. Reynolds & Reynolds Co.*, 2018 WL 6600223, at *2 (D.N.J. Dec. 17, 2018) (Thompson, J.) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

Prior to referring a controversy to arbitration, however, the Court "must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). Here, plaintiffs do not argue that their FDCPA claims fall outside the scope of the card agreements' arbitration provision.[5] Instead, they contend that there is no enforceable agreement to arbitrate because: (i) a genuine dispute exists as to whether defendants acquired the right to enforce the arbitration provision through Midland Funding's purchase of the accounts from Citibank; and (ii) even if they did acquire that right, they waived it by initiating a debt collection suit against Hejamadi in state court and challenging her FDCPA claims on their merits.

---

[5] Though not disputed by plaintiffs, the Court is satisfied that their FDCPA claims fall within the scope of the arbitration provision. (*See* Arb. Agmt. at 11 (broadly encompassing any claims "arising out of or related to" plaintiffs' accounts, including claims based on "statutory or regulatory provisions").)

### C. Assignment of Rights to Arbitration

Plaintiffs assert a number of theories to support their argument that defendants have failed to acquire the right to enforce the arbitration provision in their card agreements. As a preliminary matter, they argue that the Court must exclude the P&S agreement in the record because it is "heavily redacted and incomplete." (Opp. Br. at 9-15.) They rely on the doctrine of completeness, codified in Federal Rule of Evidence 106, which provides that "[i]f a party introduces all or part of a writing . . . , an adverse party may require the introduction, at that time, of any other part—or any other writing . . . that in fairness ought to be considered at the same time." The doctrine, which "guards against the potential for evidence to be misleading when presented out of context" requires the admission of additional evidence "'if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding.'" *United States v. Evans*, 356 F. App'x 580, 583 (3d Cir. 2009) (Simandle, J.) (quoting *United States v. Soures*, 736 F.2d 87, 91 (3d Cir. 1984)).

Here, plaintiffs argue that defendants have presented "select portions of a document which *may* misrepresent the totality of the assignment." (Opp. Br. at 11 (emphasis added).) But the record indicates that plaintiffs received the full P&S agreement in discovery with minimal redactions unrelated to the assignment. *See* n. 4, *supra*. That plaintiffs have raised the issue of completeness in this offhand and incomplete manner wastes the Court's time and strongly suggests that any resolution of the issue would not be in plaintiffs' favor. *See Rahman v. Taylor*, 2011 WL 4386733, at *8 (D.N.J. Sept. 20, 2011) (denying plaintiff's request to exclude documents where there was "no indication" that their inclusion would be "necessary to avoid unfairness or misleading the trier of fact," or that such documents would "change the context or

8

explain the information in a way relevant to Defendant's motion"). Accordingly, the Court finds no indication that it should exclude the P&S agreement from consideration.

Turning to the substance of plaintiffs' argument, they claim that "in describing assignability," the card agreements differentiate between Citibank's "ability to assign its rights under the [card agreements] and its right to assign the [accounts themselves]." (Opp. Br. at 7.) The only provision of the card agreements plaintiffs refer to is the assignment provision itself, which sets forth Citibank's right to "assign *any or all* of [its] rights and obligations under this Agreement to a third party." (*See* Arb. Agmt. at 12 (emphasis added).) Plaintiffs reason that because Citibank "can reserve rights when assigning an Account to a third party," the Court cannot assume that all of Citibank's rights under the card agreements—including the right to arbitrate—were assigned along with the accounts. (Opp. Br. at 7-8.)

In support, plaintiffs rely on *Lance v. Midland Credit Mgmt.*, 375 F. Supp. 3d 604 (E.D. Pa. Mar. 22, 2019) ("*Lance I*"), a factually-analogous case from the Eastern District of Pennsylvania in which Midland Funding is a party. There, as is the case here, Midland Funding purchased the plaintiff's account from the original creditor, Synchrony Bank, and moved to compel arbitration of the plaintiff's FDCPA claims pursuant to the arbitration provision in the relevant card agreement. In support of the motion, Midland Funding submitted a bill of sale between it and Synchrony Bank which confirmed the assignment of the plaintiff's "account," but there was insufficient evidence in the record from which the court could determine whether the assignment included the right to arbitrate. Accordingly, the court denied Midland Funding's motion without prejudice, reasoning that it could not find that the word "account" in the bill of sale "automatically include[d] all 'rights and duties' under the Agreement." *Id.* at 616.

9

Notably, although not cited in plaintiffs' brief, the same court later granted Midland Funding's renewed motion to compel arbitration in *Lance v. Midland Credit Mgmt. Inc.*, 2019 WL 2143362 (E.D. Pa. May 16, 2019) ("*Lance II*").  In support of the renewed motion, Midland Funding submitted the relevant purchase agreement with Synchrony Bank, which (i) defined "Account" as any charged-off credit card account owned by Synchrony Bank "that is being sold to Midland Funding" under the terms of the purchase agreement; and (ii) provided that Synchrony Bank sold and Midland Funding bought "all right (including the right to legally enforce, file suit, collect, settle or take any similar action with respect to such account), title and interest in and to the Accounts[.]" *Id.* at *5.  Reasoning that "all means all," the court found that Midland Funding had purchased "all" rights with respect to the plaintiff's account, including the right to arbitrate, and granted the motion to compel arbitration.  *Id.* at *7-8.

Here, the card agreements' arbitration provision allows Citibank to assign "any or all of [its] rights . . . to a third party," and provides for survival of the arbitration provision in the event of such a conveyance.  (Arb. Agmt. at 12.)  Consistent with that allowance, Citibank conveyed *all* of its rights in and to the accounts to Midland Funding, including the right to arbitrate, when it executed the P&S agreement.  Indeed, like the purchase agreement in *Lance II*, the P&S agreement plainly conveys "*all* right, title and interest of [Citibank] in and to the Accounts" to Midland Funding, and memorializes Citibank's agreement to "transfer *all* [its] right, title and interest in and to the Accounts," as well as Midland Funding's agreement to "assume, with respect to each Account, *all* of [Citibank's] rights, responsibilities, and obligations that arise as a result of [its] purchase of the Accounts."  (P&S Agmt. at ¶¶ 2.1, 2.4 (emphases added).)  In light

10

of this express conveyance of "all" rights, the Court finds that the right to arbitrate under the card agreements is a right held by Midland Funding.[6]

Finally, plaintiffs contend that even if Midland Funding has the right to enforce the arbitration provision, MCM does not because it was not a signatory to the P&S agreement. (Opp. Br. at 17-18.) But MCM's signature or lack thereof is irrelevant to the outcome of this motion, as the card agreements' arbitration provision permits Midland Funding to arbitrate claims made against it or any "employee, agent, representative or an affiliated/parent/subsidiary company." (Arb. Agmt. at 11.) As indicated in the Swaninger Declaration, MCM is a "servicer for," and "manages the debt and services accounts owned by," Midland Funding, and is thus its "agent" or "affiliate."[7] (Swaninger Decl. ¶ 1.)

### D. Waiver of Rights to Arbitration

Having determined that defendants have the right to arbitrate plaintiffs' claims, the Court next assesses whether they waived those rights by initiating a debt collection action against Hejamadi in state court or by challenging her FDCPA claims on their merits.

---

[6] Plaintiffs also argue, again relying on *Lance I*, that there exists a dispute of material fact because the bill of sale and assignment and the affidavit of sale do not define the term "Accounts." (Opp. Br. at 8-9.) This argument is meritless in light of the P&S agreement in the record, which does define the word. *See Lance I*, 375 F. Supp. 3d at 613 (because the term "Accounts" was not defined in bill of sale, court found that it "should turn to the [purchase agreement] for its definition"). More to the point, regardless of the purported deficiencies with the definition of "Accounts," other provisions of the P&S agreement expressly provide for the assignment of "all" rights from Citibank to Midland Funding. (*See* P&S Agmt. at ¶¶ 2.1, 2.4.)

[7] The Court takes judicial notice of MCM's website, which identifies it as an affiliate of Midland Funding, *see* Midland Credit Management, *Midland Funding, LLC*, available at https://www.midlandcredit.com/who-is-mcm/midland-funding-llc/ (last visited Mar. 31, 2022), as well as the opinions of other courts in this district that have similarly found that Midland Funding and MCM are "affiliates." *See, e.g.*, *Harris v. Midland Credit Mgmt., Inc.*, 2016 WL 475349, at *2 (D.N.J. Feb. 8, 2016) (Vazquez, J.) ("[MCM] is Midland Funding's affiliate tasked with collecting on [P]laintiff's delinquent account.").

11

In the Third Circuit, it is well settled that "waiver 'is not to be lightly inferred'" in light of "the strong preference for arbitration in federal courts." *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068 (3d Cir. 1995) (quoting *Gavlik Const. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783 (3d Cir. 1975)).  Accordingly, "waiver will normally be found only 'where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'" *Id.* at 1068-69 (quoting *Gavlik*, 526 F.2d at 783).  Because the "touchstone" of waiver is prejudice to the party opposing arbitration, courts typically consider a number of non-exhaustive factors when assessing waiver, including: (i) the timeliness or lack thereof of a motion to arbitrate; (ii) the degree to which the party seeking to compel arbitration has contested the merits of its adversary's claims; (iii) whether that party has informed its adversary of the intent to seek arbitration, even if it has not yet filed a motion to stay proceedings; (iv) the extent of its non-merits motion practice; (v) its assent to the court's pretrial orders; and (vi) the extent to which both parties have engaged in discovery. *See Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925-27 (3d Cir. 1992).

Here, none of the *Hoxworth* factors necessitates a finding of waiver.  Midland Funding filed a debt collection action against Hejamadi in state court pursuant to the terms of her card agreement's arbitration provision, which restricted it from initiating arbitration to collect a debt. (*See* Arb. Agmt. at 11 ("We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us.  If you assert a Claim against us, we can choose to arbitrate.").)  When Hejamadi asserted an FDCPA claim against Midland Funding and the action was removed to this Court, it moved to compel arbitration in lieu of filing an answer.  (*See* D.E. 10.)  Indeed, since removal, the only motions defendants have filed in this matter are motions to compel arbitration seeking narrow, merit-based relief in the alternative, not motions

12

focused on challenging the merits of plaintiffs' FDCPA claims. (*See* D.E. 10, 20, 70; *see, e.g.*, Mov. Br. at 25 ("[E]ven assuming, *arguendo*, that Plaintiffs can maintain the instant lawsuit, their class action allegations should be stricken as they are time-barred").) Finally, while the parties have engaged in discovery in this matter, they have done so at the Court's direction and for the sole purpose of resolving the issue of arbitrability. (*See* D.E. 36, 37.)

Accordingly, there is no evidence in the record to suggest that defendants waived their rights to arbitrate. Plaintiffs' claims must be compelled to arbitration in accordance with the terms of the card agreements' arbitration provision.[8] In light of this finding, the Court need not reach defendants' alternative requests for merit-based relief.

### IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss the amended complaint and compel arbitration (D.E. 70) is granted. An appropriate order will issue.

Date: March 31, 2022

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

---

[8] Plaintiffs do not address defendants' argument that they should be compelled to arbitration on an individual basis pursuant to the class action waiver in their card agreements' arbitration provision. (Mov Br. at 24-25.) There is no genuine issue of material fact as to the class action waiver, and thus the Court compels plaintiffs to arbitration in accordance with their agreements' terms. (*See* Arb. Agmt. at 11 ("Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis.").)