<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANTHI R. HEJAMADI and RICARDO VARELA, *on behalf of themselves and those similarly situated*,<br><br>             *Plaintiffs*,<br><br>   v.<br><br>MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC.; and JOHN DOES 1 to 10,<br><br>             *Defendants*. | Civil No.: 18-cv-13203 (KSH) (CLW)<br><br><br><br><u>OPINION</u> |

**Katharine S. Hayden, U.S.D.J.**

**I.    Introduction**

This matter is before the Court on remand from the Third Circuit to determine whether under the standard announced in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), defendants Midland Funding, LLC ("Midland") and Midland Credit Management, Inc. ("MCM") (together, "defendants") waived their right to compel arbitration of the claims asserted by plaintiffs Shanthi R. Hejamadi and Ricardo Varela in this action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. For the reasons set forth below, they did not, and their motion to compel arbitration and dismiss the action will be granted.

**II.    Background**

The background of this action is set forth in the Court's two prior opinions, as well as in the Third Circuit's decision. (D.E. 85-2, 3d Cir. Opinion; D.E. 36, 10/2/19 Opinion; D.E. 80, 3/31/22 Opinion.) As will be seen, a detailed recital of the facts and procedural history up to this motion is necessary in order to assess fairly whether defendants Midland and MCM undertook litigation steps that constitute a waiver of their contractual right to compel arbitration.

1

Plaintiffs, on behalf of a putative class, have asserted that defendants' collection letters to them violated the FDCPA. In 2017, Midland bought a pool of credit card accounts from Citibank, N.A., the original creditor on plaintiffs' accounts, and that purchase included plaintiffs' accounts. Midland then filed a collection action against Hejamadi in New Jersey Superior Court, Bergen County, Special Civil Part. She answered and counterclaimed against Midland under the FDCPA. Thereafter, Midland dismissed its collection claim against Hejamadi; the action was transferred from Special Civil Part to the Law Division; and Midland removed the action to this Court.

Midland then moved to compel arbitration on an individual basis and dismiss Hejamadi's complaint, relying on an arbitration provision and class action waiver in the credit card agreement between Hejamadi and Citibank. (D.E. 10.) Midland further argued that if the Court declined to compel arbitration, it should nonetheless dismiss the class allegations in the complaint on statute of limitations grounds and because the putative class was identical to the proposed class defined in a matter then pending before a different judge of this Court. Several weeks later, Hejamadi filed an amended complaint, which added Varela as a plaintiff and MCM as a defendant and slightly changed the class definition. (D.E. 13). Both plaintiffs then filed an opposition to Midland's motion to compel arbitration, arguing that discovery was necessary on whether a valid, enforceable agreement to arbitrate existed (D.E. 14).

Midland withdrew its pending motion to compel arbitration because the amended complaint rendered it moot. (D.E. 16, 17.) Both defendants then filed a renewed motion seeking to compel arbitration on an individual basis and dismissal of the amended complaint. (D.E. 20.) As in Midland's original motion, defendants also argued in the alternative that the class action definition was temporally overbroad and duplicative of the class definition in a different, then-

pending case. Defendants further argued that plaintiffs' claims against MCM, the newly added defendant, were barred by the statute of limitations. In opposing, plaintiffs again argued that discovery on arbitrability was necessary. (D.E. 24.)

On October 2, 2019, the Court denied the motion without prejudice so the parties could conduct limited discovery on arbitrability; for example, discovery was necessary to "determine whether defendants were transferred the right to enforce the arbitration provision" when Citibank assigned plaintiffs' accounts. (10/2/19 Opinion, at 9.) After the parties undertook that discovery, defendants renewed their motion seeking to compel arbitration on an individual basis and dismissing the action. (D.E. 70.) It made the same alternative arguments as before.

The Court granted the motion on March 31, 2022, concluding that defendants had the right to arbitrate plaintiffs' claims (*i.e.*, that there was an agreement to arbitrate and the dispute is within the agreement's scope) and had not waived that right. (D.E. 80, 3/31/22 Opinion.) The waiver analysis was based on governing Third Circuit precedent at the time, which had as its "touchstone" the prejudice to the party opposing arbitration and relied on a "number of non-exhaustive factors" to discern whether that prejudice existed. (*Id.* at 12 (citing *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925-27 (3d Cir. 1992)).[1] Plaintiffs appealed. (D.E. 82.)

On May 23, 2022, less than two months after this Court issued its opinion, the Supreme Court decided *Morgan v. Sundance*, which held that whether a party waived a contractual right to arbitrate is decided by the same standard as waiver of any other contractual right. That is, there are no "arbitration-specific variants of federal procedural rules, like those concerning

---

[1] Those factors included the timeliness of the motion to compel arbitration; the degree to which the movant had contested the merits of the claims against it; whether the movant had informed, even informally, its adversary of its intent to seek arbitration; the extent of its non-merits motion practice; its assent to pretrial orders; and the extent to which both parties had engaged in discovery. (*Id.*)

3

waiver, based on the [Federal Arbitration Act's] 'policy favoring arbitration.'" *Morgan*, 596 U.S. at 416 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). This meant that because the test for waiver does not usually include a prejudice requirement, courts cannot require prejudice to conclude that "a party by litigating too long, waived its right to stay litigation or compel arbitration under the FAA." *Id.* at 419. In so deciding, the Supreme Court rejected the case law of various circuits, including the Third Circuit, that conditioned arbitration waiver on a showing of prejudice. *Id.* at 416 & n.1 (citing *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068-69 (3d Cir. 1995)). Post-*Morgan*, the Third Circuit's test for arbitration waiver now focuses on the actions of the party seeking to arbitrate, rather than the effects of those actions on the party opposing arbitration. *White v. Samsung Elecs. Am.*, 61 F.4th 334, 339 (3d Cir. 2023).

Ruling on plaintiffs' appeal in this matter, the Third Circuit, noting the "change in governing authority that post-dates the District Court's order," remanded for this Court to address the waiver question "using the inquiry required by *Morgan*." (D.E. 85-2, 3d Cir. Opinion at 2, 6.) The panel described that inquiry as "whether a party has intentionally relinquished or abandoned a known right," and explained that the Court's focus "must [be] on the actions of the party who held the right" to arbitration, rather than on the prejudice to the opponent, and must "consider the circumstances and context of each case." *Id.* at 6 (citing *White*, 61 F.4th at 339). The Third Circuit left in place the remainder of this Court's decision.[2]

---

[2] The panel also rejected plaintiffs' newly-raised argument that this Court lacked subject matter jurisdiction because of a purported defect in removal, holding that federal question jurisdiction existed at the time of removal; that defects in removal (assuming *arguendo* there were any) do not affect subject matter jurisdiction; and any defect was waived by plaintiffs' decision to litigate for nearly four years without raising the issue, instead of moving to remand within 30 days of removal as required by 28 U.S.C. § 1447(c). (3d Cir. Opinion at 4-6.)

4

On remand, this Court entered an order setting a briefing schedule for defendants' renewed motion to compel arbitration, which was to specifically address the issue of waiver in accordance with the Third Circuit's opinion.  (D.E. 88.)

In their renewed motion, defendants argue that they took no steps in this litigation that could be construed as an intentional relinquishment or abandonment of their right to compel arbitration:  they only included merit-based arguments as alternative grounds for relief, their primary contention being that arbitration was required; that any actions they took before plaintiffs filed the amended complaint adding Varela as a plaintiff and MCM as a defendant are irrelevant; and that even if pre-amended complaint acts are considered – specifically, Midland's filing of the collection action against Hejamadi – that was not an act of waiver because such actions were excluded from the arbitration provision of the agreements. (D.E. 89-1, Defs.' Moving Br.; D.E. 93-3, Defs.' Reply Br.)

Plaintiffs counter that defendants' "repeated attempts to seek relief from the state court and repeated attempts to dismiss [p]laintiffs' claims on grounds unrelated to arbitration" reflect action inconsistent with defendants' "ostensible desire to compel arbitration in this matter." (D.E. 92-1, Pls.' Corr. Opp. Br. 5.)  Plaintiffs cite defendants' requests to strike class claims and statute of limitations arguments; their filing of a "collection lawsuit when they could have sought a court judgment"; and that defendants' discovery requests purportedly went beyond the issue of arbitrability.  (*See id.* at 1, 3-4, 9.)

III.  **Discussion**

As explained earlier, the test for whether a party has waived its contractual right to arbitrate a dispute is now "identical to the inquiry for waiver of other contractual rights."  *White*, 61 F.4th at 339.  Waiver occurs "where a party has intentionally relinquished or abandoned a

5

known right." *Id.* (cleaned up).  The focus is on the party who held the right (here, defendants), and whether, when the right concerns pursuing arbitration, the party "acted inconsistently with an intent to assert its right to arbitrate."  *Id.* at 339-40.  The inquiry is "informed by the 'circumstances and context of each case.'"  *Id.* at 339 (quoting *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011)).  To avoid arbitration, it is up to plaintiffs to establish that defendants waived their right to compel it.  *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 233 (3d Cir. 1997) (burden was on nonmovant to demonstrate movant's waiver); *Coronel v. Bank of Am.*, 2022 WL 3443985, at *2 (D.N.J. Aug. 17, 2022) (Salas, J.) ("'[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.'" (quoting *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000)); *see also White*, 61 F.4th at 339 (describing waiver as a "defense existing in contract law" (citing *Morgan*, 596 U.S. at 418)).

A careful review of this litigation through the specific lens of defendants' conduct illustrates why a finding of waiver here is not appropriate.  As described earlier, the case began with Midland's collection lawsuit against Hejamadi in the Special Civil Part of the Superior Court of New Jersey, Law Division.  (*See* D.E. 92-2, Corrected Jensen Cert. in Opp. to Renewed Mot. Compel Arb. ("Jensen Cert."), Ex. A (complaint in collection action).)  At that point, Midland could not have initiated arbitration; the arbitration provision of the card agreements, under "Arbitration limits," states in relevant part as follows:

- Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court.
- *We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us.*  If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you.  You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.

6

(D.E. 70-2, Peck Aff. in Supp. Mot. Compel Arb., Ex. 2, at page 11 of 14 (Hejamadi card agreement) (emphasis added).)[3]  Plaintiffs make much of the first limitation, arguing that Special Civil Part is different from the Small Claims Division and Midland chose not to file in small claims court.  They further suggest Midland could have initiated arbitration instead of filing a complaint at all.  (D.E. 92-1, Pls.' Corr. Opp. Br. 6-7.)  Both arguments ignore the second limitation, under which arbitration was not an option for Midland in its collection action until Hejamadi asserted her counterclaim against it.  *Accord Taylor v. CDS Adv. Sol'ns*, 2024 WL 1048124, at *10 (D.N.J. Mar. 9, 2024) (Martinotti, J.) (stating that "there is nothing to suggest that [defendant] was required to preserve its right to arbitrate during [plaintiff's] unemployment proceedings, particularly considering the Arbitration Agreement's terms, which explicitly state that it 'does not apply to. . . Unemployment Insurance claims[.]'").)

Arbitration only became an option for Midland once Hejamadi filed her counterclaim on May 24, 2018, and the next steps it took—procedural, all—were not inconsistent with positioning the case for an arbitration request: on June 29, 2018, it sought an order (i) dismissing its own claims against Hejamadi,[4] (ii) striking the class allegations or transferring the case (now comprised of only the counterclaim) to the Law Division, and (iii) realigning the parties to reflect that Hejamadi would, going forward, be in the position of plaintiff and Midland would be the defendant.  (*See* Jensen Cert., Ex. K (SCP docket sheet), Ex. B (Beh Cert. dated 6/29/18).)  Hejamadi cross-moved for a transfer to the Law Division (D.E. 93-2, Beh Reply Cert. in Supp.

---

[3] Defendants rely on the affidavits and exhibits submitted with their earlier motion to compel arbitration.  (D.E. 89-1, Defs.' Moving Br. 15 (citing D.E. 70-3, at 27).) As there is no dispute that the card agreements found among those exhibits govern here, the Court cites to them.

[4] The accompanying certification stated that Hejamadi's counsel refused to consent to Midland dismissing its own claims, forcing it to move for a court order granting that relief.  (Jensen Cert., Ex. B (Beh Cert. dated 6/29/18), ¶ 6.)

Renewed Mot. Compel Arb., Ex. 2), and Midland replied on July 10, 2018, pointing out that both parties agreed that the matter should be transferred and noted that its request to strike the class allegations had been based on, and continued to be based on, the procedural inappropriateness of pursuing a class action claim in Special Civil Part.  (Jensen Cert., Ex. K (SCP docket sheet), Ex. C (Beh Cert. dated 7/10/18).)

The record reflects that Midland was permitted to dismiss its own claims; Hejamadi re-filed her transfer motion in the Law Division; Midland re-filed its motion to realign the parties in the Law Division; and on August 17, 2018, the Law Division granted Hejamadi's motion to transfer the case from Special Civil Part to the Law Division and Midland's realignment motion. (Jensen Cert., Ex. D (Beh Cert. filed 8/10/18, ¶ 6), Ex. E (realignment order), Ex. F (transfer order), Ex. L, M (Law Div. docket sheets).)  One week later, on August 24, 2018, Midland removed the action to this Court, and its first substantive application once here was a November 6, 2018 motion to compel arbitration and dismiss the complaint.  (D.E. 10.)[5]

The waiver inquiry—whether a party has intentionally relinquished or abandoned its right to arbitrate—is "informed by the 'circumstances and context of each case.'" *White*, 61 F.4th at 339 (quoting *Gray Holdco*, 654 F.3d at 451).  Even after *Morgan*, the "circumstances and context" can include considerations such as the timeliness of the arbitration request, the extent of the movant's merits-based arguments up to that point, and its participation in discovery. *Coronel*, 2022 WL 3443985, at *4 n.4 (concluding that "many of the *Hoxworth* factors relating to the moving party's litigation conduct . . . should still inform a court's determination regarding

---

[5] Before this, its only applications had been requests to extend its time to respond to Hejamadi's complaint.  (D.E. 5, 6, 8.)

waiver," so long as they are applied to the updated standard).[6] In *Smith v. Experian Information Solutions, Inc.*, a defendant had not waived arbitration where it "filed an answer, attended two conferences, and engaged in the early stages of pre-trial discovery" (all "early-stage activities that took place within four months of Plaintiff initiating the action") and had not, for example, only sought arbitration after a failed motion to dismiss on other ground. 2023 WL 6057377, at *5 (D.N.J. Sept. 14, 2023) (Arleo, J.).

In *White*, in contrast, defendant's litigation actions "evince[d] a preference for litigation over arbitration" and reflected a waiver of its right to arbitrate. 61 F.4th at 340. Among those action: it had twice moved to dismiss the complaint, filed a proposed discovery plan that was silent on arbitration (even though the form asked about court-annexed arbitration), sought a stay pending the outcome of the second motion to dismiss, moved to dismiss the amended complaint, moved for reconsideration of the denial of that motion to dismiss, and waited until more than three years into the litigation to move to compel arbitration. *Id.* at 337, 340. It had "continuously sought and agreed to stays in discovery . . . to pursue motions to dismiss on the merits," and "[a]lthough motions to dismiss will not always evidence an intent to litigate instead of arbitrate," such as where the motion was on procedural grounds and made soon before the motion seeking arbitration, this defendant "clearly sought" to have the case dismissed on the merits and, more broadly, took actions in the case that "demonstrated a decision to pursue the benefits of litigating its arbitrable claims." *Id.* at 340-41.

---

[6] This is consistent with the analysis in *White*, which examined many of the factors listed in *Hoxworth* (the extent of the defendant's merit- and non-merits-based motion practice, timing, the absence of even informal notice to plaintiffs of an intent to arbitrate, acquiescence to the Court's pretrial orders) in its post-*Morgan* application of the waiver standard. *White*, 61 F.4th at 340-41.

Here, the case became arbitration-eligible on May 24, 2018 with the filing of Hejamadi's counterclaim and less than six months later, Midland formally moved to compel arbitration. In between, no merits litigation took place, and the parties did not engage in discovery. Plaintiffs' own certification in opposition to defendants' motion shows that the parties did not begin exchanging discovery requests until late October 2019, *after* (and in response to) this Court's October 2, 2019 decision ordering discovery on arbitrability. (D.E. 92-2, Jensen Cert. ¶¶ 8-9, Ex. G, H.)

Plaintiffs assert that defendants have sought to "litigate matters outside the context of arbitration" and have "repeated[ly] attempt[ed] to dismiss Plaintiffs' claims on grounds unrelated to arbitration." (D.E. 92-1, Pls.' Corr. Opp. Br. 4, 5, 8-9.) In each instance, however, the arguments plaintiffs refer to – which pertain to timeliness and whether the class claims were appropriate given the pendency of another action – were made in the alternative, as a fallback position if the Court declined to compel arbitration. For example, in Midland's initial motion to compel arbitration (which preceded MCM's presence in the case), its moving brief, after extensively arguing why arbitration is proper, and why it must be conducted on an individual (rather than class-wide) basis in view of the arbitration agreement's class action waiver, prefaced the remaining arguments as follows:

> This lawsuit should be dismissed and Plaintiff should be ordered to arbitrate her claims on an individual basis. ***Nevertheless, even assuming arguendo that Plaintiff can maintain the instant lawsuit,*** her class action allegations should be dismissed as improper.

(D.E. 10-5, at 16 (emphasis added).) Midland, joined by MCM after plaintiffs named it in the amended complaint, steadfastly continued to argue for arbitration in the two subsequent rounds of motion practice; its merits-based arguments in that same briefing were consistently secondary to its arbitration arguments. (D.E. 20-1; D.E. 27; D.E. 70-4; D.E. 78.) These alternative

10

arguments defendants made in *motions to compel arbitration* do not reflect action "inconsistent[] with an intent to assert [their] right to arbitrate." *White*, 61 F.4th at 340. The clear intent was to assert (not to relinquish or abandon) that right, without compromising their position if the Court declined to enforce the right to arbitrate. *See, e.g.*, *In re Frescati Shipping Co., Ltd.*, 886 F.3d 291, 313 (3d Cir. 2018) (affirmative defense is waived if not raised "at a pragmatically sufficient time and if the opposing party would be prejudiced if the defense were allowed") (cleaned up); *Stafford v. E.I. Dupont De Nemours*, 27 F. App'x 137, 140 (3d Cir. 2002) (same, and noting that statute of limitations is an affirmative defense).

Grasping at straws, plaintiffs argue that defendants sought, in discovery, "information outside of the narrow issue of arbitrability," citing requests Midland (but not MCM, which was not yet a party by that point) propounded on October 31, 2019. (D.E. 92-1, Pls.' Corr. Opp. Br. 9.) Defendants counter that the requests plaintiffs challenge were related to the issue of contract formation – a matter that needed to be resolved for the Court to rule on the arbitrability of the case. (D.E. 93-3, Defs.' Reply Br. 6; *see* D.E. 36, 10/2/19 Opinion at 6, 10 ("At issue here is the first question a court must ask before compelling parties to arbitrate—whether there is an agreement to arbitrate. . . . Once the parties have completed limited discovery on the issue of arbitrability, defendants may renew their motion to compel arbitration.").) Moreover, as that discovery was only sought pursuant to the Court's order requiring arbitrability discovery (D.E. 37), the conclusion cannot be drawn that the Midland's requests were "inconsistent with an intent to assert its right to arbitrate." *White*, 61 F.4th at 340.

The parties will be compelled to proceed to arbitration and this matter will be dismissed.[7]

---

[7] Dismissal, rather than a stay, of this action is the appropriate course because neither party has requested a stay pending arbitration. *Taylor*, 2024 WL 1048124, at *10 n.8; *see also Davis v. Ally Fin. Inc.*, 2024 WL 2239144, at *4 n.4 (D.N.J. May 17, 2024) (Bumb, J.) (dismissing, rather

11

**IV.     Conclusion**

For the foregoing reasons, defendants' renewed motion to compel arbitration and dismiss the amended complaint is granted. An appropriate order will issue.

/s/ Katharine S. Hayden

Date: June 25, 2024                                                                    Katharine S. Hayden, U.S.D.J.

---

than staying, in favor of arbitration "because neither party made a request for a stay pending arbitration"; citing *Smith v. Spizzirri*, 144 S. Ct. 1173 (2024), which held that stay pending arbitration, rather than dismissal, is appropriate course when a party *requests* a stay).

12